**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

HAMILTON INSURANCE DAC,                    :

     Petitioner/Counter Defendant,     :

vs.                                        :

PFEIFER SUTTER FAMILY LLC,                 :

     Respondent/Counter Plaintiff/     :      CA 22-0282-KD-MU
     Third Party Plaintiff,

                                        :

vs.                                        :

                                        :

JOHNS EASTER COMPANY, INC.,                :
et al.,

     Third Party Defendants.

## <u>REPORT AND RECOMMENDATION</u>

This cause is before the Magistrate Judge for issuance of a report and

recommendation, pursuant to 28 U.S.C. § 636(b)(1) and S.D. Ala. GenLR 72(a)(2)(S),

on the Petition for Declaratory Judgment (Doc. 1), Respondent Pfeifer Sutter Family,

LLC's ("Pfeifer") Answer, Counterclaim and Third Party Complaint (Doc. 7), Petitioner

Hamilton Insurance DAC's ("Hamilton") motion to dismiss fraud claim of Respondent's

Counterclaim (*see* Doc. 18), the motion to dismiss Pfeifer's third-party complaint filed by

third-party defendants Johns Eastern Co., Inc ("Johns Eastern"), John Stelter ("Stelter"),

J.S. Held, LLC ("J.S. Held"), and Rimkus Consulting Group, Inc.  ("Rimkus") (Doc. 20),

and the motion to dismiss Pfeifer's third-party complaint filed by third-party defendant

James Crowell ("Crowell") on September 27, 2022 (Doc. 30). The Court took the first

two motions to dismiss under submission separately and instructed Pfeifer to file its responses in opposition, or otherwise plead, not later than September 22, 2022 (*compare* Doc. 19, PageID.283 *with* Doc.21, PageID.290); however, to date, Pfeifer has neither opposed those motions to dismiss nor has it sought to amend its counterclaim and/or its third-party complaint (*see* Docket Sheet). Because Crowell's motion to dismiss Pfeifer's third-party complaint is identical to the earlier-filed motion to dismiss by Johns Eastern, Stelter, J.S. Held, and Rimkus (*compare* Doc. 30 *with* Doc. 20) and as Pfeifer filed no response in opposition (or an amended third-party complaint) with respect to the "Johns Eastern" motion to dismiss (*see* Docket Sheet), the undersigned finds that it is unnecessary to enter a submission order on Crowell's motion to dismiss (*see* Doc. 30; *compare id. with* Doc. 20).[1] Based on the contents of the pleadings outlined above and the relevant legal analysis, the Magistrate Judge **RECOMMENDS** that the motions to dismiss be **GRANTED**; that Pfeifer's fraud claim asserted against Hamilton and the third-party defendants be **dismissed without prejudice** for failure to plead with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure; and that Pfeifer's bad faith claim asserted against the third-party defendants be **dismissed with prejudice**.

## PROCEDURAL/FACTUAL BACKGROUND

On September 16, 2020, Hurricane Sally moved onshore in Gulf Shores, Alabama, causing extensive flooding and damage to property. (*See* Doc. 1, PageID.2-9). Respondent Pfeifer owns Units A&B at 1328 W. Lagoon Avenue, Gulf Shores,

---

[1] Pfeifer will in no manner be prejudiced by the undersigned's failure to take Crowell's motion to dismiss under submission because Pfeifer has the opportunity to file objections to the undersigned's recommended disposition of all pending motions to dismiss.

Alabama, and this property sustained damage from the hurricane. (*See id.,* PageID.2-3).

The Gulf Shores property owned by Pfeifer was insured by Hamilton, who issued a Commercial Property Policy, bearing number JTA1500225, to Pfeifer effective May 22, 2020 through May 22, 2021. (*Id.*, PageID.2). After Pfeifer reported a loss to the covered property, Hamilton began its investigation. (*See id.,*  PageID.3-9). Hamilton initially assigned James Crowell, a Johns Eastern Company, Inc. field inspector, to inspect the property on October 2, 2020 (*id.,* PageID.3), but after receipt of Pfeifer's November 3, 2020 Sworn Proof of Loss (which reflected a total loss of $252,352.00, as well as other claims), "Hamilton assigned J.S. Held and a Building Consultant from Rimkus to conduct further investigation and provide an expert analysis of the claimed damage." (*Id.,* PageID.3&4; *see also id,* PageID.4 ("The Building Consultant from Rimkus inspected the property on November 25, 2020. J.S. Held conducted its inspection on 11/30/2020.")). Based on these inspections and the report issued by J.S. Held, in early February and March of 2021, Hamilton made several payments to Pfeifer, the first for covered damage to the real property/building and the second in partial payment of the claim for loss of business income. (*See id.,* PageID.6). Thereafter, Hamilton continued its investigation of Pfeifer's claims for loss of business income and business personal property; on March 25, 2021, Hamilton made a second payment to Pfeifer for the claim of loss of business income and, on April 22, 2021, Petitioner issued a $50,000 payment to Respondent on its claim for loss of business personal property. (*See id.,* PageID.6&7). In addition, after Pfeifer submitted (on April 16, 2021) a claim for emergency mitigation services by Patriot Disaster Specialist in the amount of

$65,733.73, Hamilton ultimately settled this claim "and paid Patriot a negotiated amount of $51,610.59." (*Id.,* PageID.7).

Hamilton's petition for declaratory judgment goes on to outline the purported remaining areas of dispute (*id.,* PageID.7-8), the Respondent's invocation of the appraisal process on September 2, 2021, and the appraisers' June 14, 2022 entry of an "award for the replacement costs of the building, regardless of the scope of covered damages[.]" (*Id.,* PageID.8; *see also id.,* PageID.9 ("The award does not break[]down the scope of the damages to determine if they are covered or not covered under the Policy.")). The appraisers' "award" was $379,904.25 based on replacement cost value, and $367,618.56 based on actual cash value. (*Id.,* PageID.8).

On July 18, 2022, Hamilton filed a petition for declaratory judgment in this Court, seeking this Court's declaration that "no coverage is afforded under the Hamilton policy for loss or damage to the interior of the covered building, caused by or resulting from rain and/or water intrusion, on 09/16/2020, that is not first caused by an opening to its roof or walls that resulted from a covered cause of loss[.]"(*Id.,* PageID.14).

Respondent Pfeifer filed its answer, counterclaim, and third-party complaint on August 11, 2022. (Doc. 7). In support of its counterclaim and third-party complaint, Pfeifer made numerous self-described general allegations of fact, inclusive of the following:

> 16.    The claim was assigned to the [Johns Eastern] Company for adjusting with [James] Crowell and [John] Stelter being the individual adjusters.
>
> 17.    Crowell did a site inspection and sent the results to Stelter.
>
> 18.    Upon information and belief, Stelter further transmitted this information to the Company and Hamilton.

4

19.     This information was then communicated by mail and the internet with an intent to defraud PSF.

20.     The initial site inspections were intentionally false and concluded that most of the damage done to PSF's property was by wind driven rain. Instead, most of the damage was done by storm created openings, as Hamilton's appraiser ultimately concluded.

21.     Rimkus and J.S. Held both conducted inspections on the property. These inspections were similarly erroneous and intended to defraud PSF. PSF requested that the inspection be videotaped, but Defendants refused because the video would have debunked their fraudulent denial of the claim. Eventually, Hamilton paid just a small percentage of Plaintiff's damages. But Stelter was not done.

22.     Stelter continued his charade by asking for an examination under oath (EUO).

23.     During the EUO, Hamilton and Stelter spent hours questioning PSF. The EUO was conducted in bad faith and was solely intended to harass PSF.

24.     Then Hamilton requested that PSF mediate the claim. Hamilton made a low ball offer which was intended to extort and further harass PSF.

25.     PSF rejected the offer, so Hamilton fraudulently claimed they needed more information.

26.     Hamilton had sufficient information to make a claim decision, but they just refused to do so to harass and defraud PSF. Consequently, Hamilton adjourned the mediation.

27.     Once Hamilton made clear they would not participate in mediation in good faith, the appraisal process was invoked.

28.     The parties each selected an appraiser, which cost PSF $7500.00. But Hamilton never intended to pay.

29.     Both the appraisers agreed on the damages and issued an award.

30.     Hamilton refused to accept the award in breach of their obligation under the policy.

(Doc. 7, PageID.118-20). Based upon these general factual allegations, Pfeifer asserts a claim of bad faith failure to handle PSF's claim against Hamilton and the third-party defendants (Doc. 7, PageID.120); a breach of contract (the insurance policy) claim against Hamilton, due to Hamilton's refusal to accept the results of the appraisal (*id.,* PageID.120-21); and a fraud claim against Hamilton and the third-party defendants, based upon their "numerous false representations of material facts as alleged more specifically herein." (*Id.,* PageID.121).

On September 1, 2022, Petitioner Hamilton filed a motion to dismiss the counterclaim for fraud asserted against it by Pfeifer. (Doc. 18).[2] Some five days later, on September 6, 2022, third-party defendants Johns Eastern, Stelter, J.S. Held, and Rimkus moved to dismiss both claims asserted against them by Pfeifer (for bad faith handling of claim and fraud). (Doc. 20).[3] And, finally, on September 27, 2022, the remaining third party identified in Pfeifer's third-party complaint, James Crowell, filed his motion to dismiss third-party complaint, a motion identical in all substantive respects to the earlier-filed motion to dismiss third-party complaint (Doc. 30; *compare id. with* Doc. 20).

## CONCLUSIONS OF LAW

A. **Pleading Standard.** The sufficiency of a Plaintiff's claims to proceed beyond the pleading stage, and into discovery, is governed by the plausibility standard articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550

---

[2]     Pfeifer's counterclaims for breach of contract and bad faith failure to handle claim (*see* Doc. 7, PageID.120-21) are not mentioned in Hamilton's motion to dismiss (*see* Doc. 18) and, therefore, obviously remain pending before this Court for appropriate disposition.

[3]     Pfeifer's third-party complaint does not assert a claim for breach of contract against the third parties. (*See* Doc. 7, PageID.120-21).

U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and further detailed in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In *Twombly,* the United States Supreme Court expressly abrogated the *Conley v. Gibson,* 355 U.S. 41 (1957) "no set of facts" pleading standard, holding that test "has earned its retirement" and "is best forgotten." *Twombly*, 550 U.S. at 563, 127 S.Ct. at 1969; *Simpson v. Sanderson Farms, Inc.,* 744 F.3d 702, 714 (11th Cir. 2014) ("[T]he Supreme Court categorically retired [the no set of facts test] in *Twombly.*").

Post *Twombly,* "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. The Court made clear that to satisfy the requirements of Fed.R.Civ.P. 8(a) "something beyond the mere possibility [of an entitlement to relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people[.]" *Id.* at 557-58, 127 S.Ct. at 1966 (internal quotation marks omitted; citations omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia,* 687 F.3d 1244, 1254 (11th Cir. 2012) (citations omitted), *cert. denied,* 568 U.S. 1088, 133 S.Ct. 856, 184 L.Ed.2d 656 (2013).

The Court directed that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 550 U.S. at 558, 127 S.Ct. at 1966 (internal quotations marks and ellipses omitted; citations

7

omitted). "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process[.]" *Id*. at 559, 127 S.Ct. at 1967. "[T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases…[;]it is only by taking care to require allegations that reach the level [of showing a plausible entitlement to relief] that we can hope to avoid the potentially enormous expense of discovery[.]" *Id.*

The Eleventh Circuit has likewise emphasized the importance of only allowing plausible claims to proceed beyond the pleading stage: "Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) together establish a notice-pleading standard that is applied, in a context-specific manner, with the recognition that the imposition of litigation costs must be justified at the threshold by the presence of factual allegations making relief under the governing law plausible, not merely speculative." *ABB Turbo Systems AG v. Turbousa, Inc.* 774 F.3d 979, 984 (11th Cir. 2014); *see Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 & 1367-68 (11th Cir. 1997) (recognizing that "[d]iscovery imposes several costs on the litigant from whom discovery is sought[]" and "discovery imposes burdens on the judicial system; scarce judicial resources must be diverted from other cases to resolve discovery disputes."); Fed.R.Civ.P. 1 (recognizing that the Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

In *Iqbal,* the Supreme Court gave additional definition to the Rule 8(a) analysis framed in *Twombly*. The Court explained that under *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

8

claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (internal citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679, 129 S.Ct. at 1950. Courts do not "'accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* at 678, 129 S.Ct. at 1950 (citation omitted); *see also id.* at 678, 129 S.Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[.]").

The *Iqbal* Court made clear that "[t]he pleading standard Rule 8 announces…demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678, 129 S.Ct. at 1949 (internal citations omitted). Consequently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679, 129 S.Ct. at 1950 (brackets and citation omitted). Therefore, dismissal of a factually insufficient complaint is required because "Rule 8…does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79, 129 S.Ct. at 1950.

In *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010), the Eleventh Circuit Court of Appeals distilled the *Twombly/Iqbal* pleading standard into a

functional "two-prong approach" for the evaluation of the sufficiency of a plaintiff's pled allegations: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 1290 (citation omitted). The Eleventh Circuit also explained: "Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (citation omitted).

Dismissal is required when the factual averments in a complaint affirmatively foreclose the existence of a plausible entitlement to relief. *See, e.g., Villarreal v. R.J. Reynolds Tobacco Co.,* 839 F.3d 958, 971 (11th Cir. 2016) ("A plaintiff nonetheless can plead himself out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling."), *cert. denied,* ___ U.S. ___, 137 S.Ct. 2292, 198 L.Ed.2d 724 (2017); *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.,* 713 F.2d 618, 621 (11th Cir. 1983) ("[A] party is bound by the admissions in his pleadings."). "[A] plaintiff can plead himself out of court. If he alleges facts that show he isn't entitled to a judgment, he's out of luck." *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir. 1992) (internal citations omitted).

1.     **<u>Pfeifer's Third-Party Bad Faith Claim</u>**.   In its combined counterclaim/third-party complaint, Pfeifer avers not only that Hamilton, the entity which issued the subject insurance policy to Pfeifer, is liable for bad faith but, as well, that all third-party defendants identified in Pfeifer's pleading are liable for the bad faith handling

of its insurance claim. (*See* Doc. 7, PageID.120). Pfeifer does not assert a breach of

contract claim against the third-party defendants (*see id.*, PageID.120-21), presumably

because they are not parties to the insurance contract but does attempt to assert a

claim of bad faith under Alabama law against them (*see id.,* PageID.120). Pfeifer's

attempt in this regard fails, however, because it is clearly established that non-

contractual parties cannot be held liable under Alabama law for bad faith. *Walsh v.

Chubb,* 2020 WL 8175594, *11 (N.D. Ala. Oct. 21, 2020) ("[B]ecause any potential bad

faith claim stems from a breach of the underlying contract, the [Plaintiffs] also cannot

subject non-contractual-parties to a bad faith claim."); *see also Jones v. State Farm Fire

and Cas. Co.,* 2021 WL 4806745, *3 (S.D. Ala. Sept. 23, 2021) (recognizing that where

Plaintiff could not maintain an action for breach of contract against insurance agent who

was not a party to the insurance contract, she could not "maintain an action for bad

faith" against the agent), *report and recommendation adopted,* 2021 WL 4810624 (S.D.

Ala. Oct. 14, 2021); *Holderfield v. Allstate Ins. Co.,* 2014 WL 1600309, *2 (N.D. Ala. Apr.

21, 2014) ("Because Barkley was not a party to the [insurance] contract, she cannot be

liable for breach of contract. . . . Because the plaintiffs cannot maintain an action for

breach of contract against Barkley, they cannot maintain an action for bad faith. . . .

Neither the breach of contract nor bad faith claim is actionable against Barkley.");

*Sparks v. Allstate Indem. Co.,* 2007 WL 9711945, *2 (N.D. Ala. Dec. 20, 2007) ("Under

Alabama law, a claim for 'bad faith' is a cognizable cause of action only in the context of

a breach of an insurance contract and may be brought only by a party to that contract. .

. . An insurance adjuster, not being a party to the insurance contract, cannot be held

liable for bad faith."); *Ligon Furniture Co., Inc. v. O.M. Hughes Ins., Inc.,* 551 So.2d 283,

285 (Ala. 1989) ("The tort of 'bad faith' is not a cognizable cause of action in Alabama, except in the context of a breach of an insurance contract, by a party to that insurance contract[.] In the present case, the evidence shows that Ligon had no insurance contract with Hughes, Gay & Taylor, or Routledge upon which to base a claim of bad faith. Ligon's contract of insurance was with Compass. The trial court, therefore, properly entered summary judgment [in favor of Hughes, Gay & Taylor, and Routledge] on this cause of action."). Because third-party defendants Johns Eastern, Stelter, J.S. Held, Rimkus, and Crowell are not parties to the insurance contract at issue in this case (only Pfeifer and Hamilton are parties to the insurance contract), Pfeifer's claim of bad faith against these third parties fails as a matter of law. Accordingly, the undersigned **RECOMMENDS** that the third-party defendants' motions to dismiss the bad faith claim **with prejudice** (Doc. 20, PageID.286; *see also* Doc. 30, PageID.311) be **GRANTED.**

       2.     **Pfeifer's Counterclaim and Third-Party Claim for Fraud.** In its combined counterclaim/third-party complaint, specifically in Count III, Pfeifer alleges a claim of fraud against Hamilton and the third-party defendants. (*See* Doc. 7, PageID.121). "Under Alabama law, '[t]he elements of fraud are: (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence.'" *Rivers v. Liberty Mut. Ins.,* 2020 WL 6395452, *2 (M.D. Ala. Nov. 2, 2020), quoting *Brushwitz v. Ezell,* 757 So.2d 423, 429 (Ala. 2000). And for fraud claims brought in federal court, like Pfeifer's, a higher threshold of specificity is required; under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake." Fed.R.Civ.P. 9(b). To plead a fraud claim with particularity under Rule 9(b), therefore, the subject pleading (here, the counterclaim/third-party complaint) must "set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *FindWhat Investor Group v. FindWhat.com,* 658 F.3d 1282, 1296 (11th Cir. 2011) (citations omitted), *cert. denied,* 568 U.S. 814, 133 S.Ct. 109, 184 L.Ed.2d 23 (2012).

Here, Pfeifer's counterclaim/third-party complaint for fraud (Count III) contains only a formulaic recitation of the elements of fraud (*see* Doc. 7, pageID.121), a pleading death knell. *See Twombly*, *supra,* 550 U.S. at 555, 127 S.Ct. at 1965. Moreover, in its self-styled "General Allegations of Fact," Pfeifer merely generally alleges that the inspections of its damaged Gulf Shores property by Crowell (relayed to Hamilton and Johns Eastern by Stelter), and the later inspections by Rimkus and J.S. Held, were intentionally false and, at least with respect to Crowell's inspection, was communicated by mail and the internet with the intent to defraud Pfeifer and, further, that during the course of mediating the insurance claim and after Pfeifer rejected Hamilton's low-ball offer, Hamilton fraudulently claimed it needed more information before it could make a claim decision. (*See* Doc. 7, PageID.118-19). All of these facts are general, however, without factual detail, as absent are any allegations regarding dates, specific statements, that is, the contents of the statements  (from the inspection reports or

during the mediation), the identities of the individuals making the fraudulent statements and the manner in which they misled Pfeifer, and what Hamilton and the third-party defendants obtained as a consequence of the fraud (*see id.*). *See FindWhat Investment Group, supra.*[4] Accordingly, Hamilton and the third-party defendants are correct that Pfeifer's counterclaim/third-party claim for fraud does not meet the specificity requirement of Rule 9(b). Therefore, the undersigned **RECOMMENDS** that the movants' motions to dismiss Pfeifer's fraud claim (*compare* Doc. 18 *with* Docs. 20 & 30) be **GRANTED** and that Pfeifer's fraud counterclaim against Hamilton and the third-party claim for fraud against Johns Eastern, Stelter, J.S. Held, Rimkus, and Crowell be **DISMISSED WITHOUT PREJUDICE.** *See, e.g., Rivers, supra,* at *4 dismissing misrepresentation claim without prejudice); *Lovell v. Selene Finance, L.P.,* 2018 WL 1609635, *4 (N.D. Ala. Apr. 3, 2018) (dismissing without prejudice Plaintiffs' misrepresentation claim due to their failure to plead the claim with particularity).[5]

## CONCLUSION

---

[4]    The movants also are correct that Pfeifer's fraud claim is insufficient under Rule 9(b) because in its allegations of fraud it lumps all of the movants together. *See Ambrosia Coal & Constr. Co. v. Pages Morales,* 482 F.3d 1309, 1317 (11th Cir. 2007) ("'[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud.'")

[5]    Despite Pfeifer's failure to respond to either of the first two motions to dismiss filed in this Court or, otherwise, amend its counterclaim/third-party complaint (whether as of right or by requesting leave of court to amend), the undersigned **RECOMMENDS** that the Court instruct Pfeifer that if it wishes to pursue a fraud claim against Hamilton and the third-party defendants, it should seek to amend its counterclaim/third-party complaint by a date certain. In absence of any action by Pfeifer, the third-party defendants should be terminated from this action. And while Pfeifer's fraud counterclaim will also be dismissed against Hamilton in the event Pfeifer does not amend its counterclaim/third-party complaint, Pfeifer's breach of contract and bad faith claims against Hamilton will proceed to final judgment.

Based upon the foregoing, it is **RECOMMENDED** that the motions to dismiss filed by Hamilton (Doc. 18) and third-party defendants Johns Eastern, Stelter, J.S. Held, and Rimkus (Doc. 20) and Crowell (Doc. 30) be **GRANTED**; that Pfeifer's third-party claim for bad faith against the third-party defendants be **DISMISSED WITH PREJUDICE**;[6] and that Pfeifer's fraud claim asserted against Hamilton and the third-party defendants be **DISMISSED WITHOUT PREJUDICE.**

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's

---

[6]     Pfeifer's bad faith claim against Hamilton (together with its breach of contract claim against Hamilton) shall proceed to final judgment.

report and recommendation where the disputed determination is found. An objection

that merely incorporates by reference or refers to the briefing before the Magistrate

Judge is not specific.

      **DONE** this the 30th day of September, 2022.

                s/P. Bradley Murray_____
                **UNITED STATES MAGISTRATE JUDGE**